**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PROSERV REMOVAL, INC., on behalf of itself and all others similarly situated,** | **Case No. 2:20-cv-02331-JDW** |
| *Plaintiff,* | |
| v. | |
| **CRYSTEEL MANUFACTURING, INC.,** | |
| *Defendant.* | |

## MEMORANDUM

Crysteel Manufacturing makes truck bodies in Minnesota for 1-800-GOT-JUNK franchisees. One of those franchisees, Proserv Removal, uses Crysteel truck bodies to haul away junk in Pennsylvania, but that does not mean that Proserv can haul Crysteel into court here. Without personal jurisdiction, Proserv cannot maintain its claims against Crysteel in this forum.

## I.    BACKGROUND

### A.    Proserv's Acquisition Of Crysteel-Manufactured And Warranted Truck Bodies

Crysteel manufactures dump truck bodies in Lake Crystal, Minnesota. Then, each truck body is attached to a truck chassis for dumping or storage. In 2013, Crysteel entered into an exclusive supply agreement with 1-800-GOT-JUNK ("GJ") to manufacture and supply truck bodies that GJ requires its franchisees to purchase. GJ requires its franchisees to purchase the trucks from Elizabeth Isuzu in Truman, Minnesota (the "Dealership"). The Dealership delivers a truck chassis to Crysteel. In turn, Crysteel manufactures a truck body and mounts it to the chassis. Once the assembly is complete, Crysteel delivers the truck back to the Dealership, or someone

from the Dealership picks-up the truck and brings its back to the Dealership to be sold.  That is the end of Crysteel's involvement with delivery of the 1-800-GOT-JUNK trucks.

Then, the Dealership—not Crysteel—sells the trucks to GJ franchisees all over the country. There is no direct sales relationship between Crysteel and the franchisees.  In fact, Crysteel has never sold a truck body package to a franchisee.  Instead, the Dealership arranges for the trucks to be delivered to the franchisees, or a franchisee picks up the truck itself.  When the Dealership sells a truck, it includes a warranty from Crysteel for the truck body, which is documented with the other manuals inside the vehicle.  That warranty covers Crysteel's truck bodies for defects in material, workmanship, and paint for sixty months, at 100% coverage for the first thirty-six months and then 50% coverage for the next twenty-four months.

Proserv is a GJ franchisee that purchased numerous trucks with truck bodies that Crysteel manufactured.  Proserv alleges that Crysteel designed and/or manufactured the truck bodies in such a way that predisposed them to premature rusting and corrosion resulting in very serious and expensive damage.  When Proserv's truck bodies began to rust and corrode, it communicated with various representatives of Crysteel and "discussed in detail the significant rust and corrosion of the truck bodies as well as the contents and applicability of the warranties …."  (ECF No. 15-1 at ¶ 9.)  In April 2019, a Crysteel Quality Manager visited Proserv's location in Pennsylvania to inspect the truck bodies in connection with Proserv's warranty claim.  Crysteel has not repaired or replaced the defective truck bodies.

### B.      Procedural History

In light of Crysteel's refusal to repair or replace the rusted and corroded truck bodies, on May 18, 2020, Proserv filed a Complaint against Crysteel on behalf of itself and all other GJ franchisees that had to purchase trucks with Crysteel-made truck bodies.  Proserv brings claims

against Crysteel for breaches of implied and express warranties, unjust enrichment, violations of various state consumer protection laws, fraud, and misrepresentation, all stemming from Crysteel's manufacture and sale of allegedly defective truck bodies.

On July 31, 2020, Crysteel moved to dismiss the Complaint for lack of personal jurisdiction. According to Crysteel, this Court is not the proper forum for Proserv's claims because Crysteel has no meaningful connections with Pennsylvania. Crysteel's motion is ripe for disposition.

## II.      LEGAL STANDARD

A district court may dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). When confronted with a motion to dismiss on this basis, a court must accept all of a plaintiff's factual allegations as true and resolve all factual disputes in the plaintiff's favor. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). However, once a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to establish, through "affidavits or other competent evidence," that the district court has personal jurisdiction over the non-resident defendant. *Id.* It is not sufficient to rely on the pleadings alone. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Once the plaintiff demonstrates a prima facie case of personal jurisdiction, the burden shifts back to the defendant to establish that the exercise of jurisdiction would be unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).

## III.     DISCUSSION

Personal jurisdiction may be general or specific. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Proserv argues for both, but it proves neither.

### A.      General Jurisdiction

General jurisdiction arises where a party is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).   In the case of a corporation, that is generally the company's place of incorporation and/or its principal place of business. *See id.* Crysteel is incorporated and has its principal place of business in Minnesota.  Proserv offers no evidence demonstrating that Crysteel is otherwise "at home" in Pennsylvania.  Instead, it relies on cases that pre-date *Daimler* and ignores the Supreme Court's governing standard for determining general jurisdiction over corporations.

### B.      Specific Jurisdiction

Specific jurisdiction arises when a party directs its conduct into the forum jurisdiction and the claims arise from those activities. *See Danziger& De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129-30 (3d Cir. 2020).  To prove that specific jurisdiction exists, a plaintiff must demonstrate three elements: 1) the defendant "purposefully directed [its] activities" at the forum; 2) the plaintiff's claims "arise out of or relate to" at least one of those activities; and 3) if so, the exercise of jurisdiction otherwise comports with fair play and substantial justice. *Id.* (quotes omitted).  This analysis is claim specific. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).  For contract claims, "[t]he mere existence of a contract is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citation omitted). Instead, courts consider the totality of the circumstances, taking into account the location of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (same); *see also Remick*, 238 F.3d at 256.  For tort claims, a plaintiff must prove "'a closer and more direct causal connection than' but-for causation. The defendant must have benefitted enough from the forum state's laws to make the burden of facing

4

litigation there proportional to those benefits." *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317).  "Plus, intentional torts require more: The defendant must have expressly aimed its tortious conduct at the forum to make the forum the focal point of the tortious activity. And the plaintiff must have felt the brunt of the harm in the forum." *Id.* (cleaned up).  To satisfy this test, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, **and** point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998) (emphasis added).

Proserv identifies three alleged contacts with Pennsylvania: 1) Crysteel "delivered the warranty at issue directly to Plaintiff in Pennsylvania[;]" 2) Crysteel "communicated via telephone and email extensively with Plaintiff over the course of years regarding the rust and corrosion to the truck bodies as well as the applicable and content of the warranty[;]" and 3) Crysteel's Quality Manager "traveled to Pennsylvania in order to specifically evaluate the rust and corrosion of the Plaintiff's Truck Bodies and to discuss the warranty with the Plaintiff directly."  (ECF No. 15 at 7.)  None of them, individually or together, establishes specific jurisdiction.

Contrary to Proserv's assertion, Crysteel did not deliver a warranty at issue to Proserv in Pennsylvania. In fact, Crysteel did not deliver a warranty to Proserv at all. The Dealership purchased truck bodies from Crysteel. When it did, Crysteel delivered the warranty to the Dealership with the product manuals. Then, the Dealership sold a truck, including the product manuals and the warranty, to Proserv. When the Dealership sold the truck to Proserv, it conveyed all of its rights in the truck, including the warranty, to Proserv. It is debatable whether the Dealership's sale to Proserv took place in Minnesota or in Pennsylvania. But it doesn't matter because Crysteel wasn't a part of it. It had no say in where the transaction took place, where the

Dealership delivered the truck, or even if Proserv resold a truck (and its warranty) to someone in a different state. The fact that the Dealership might have sold something to Proserv in Pennsylvania does not evidence Crysteel's purposeful direction of activity at Pennsylvania.

Crysteel's other contacts with Proserv in Pennsylvania, including emails and telephone calls with Proserv about the corrosion issues and a single visit by a Crysteel employee to Pennsylvania to inspect Proserv's trucks—do not establish specific jurisdiction for two reasons. First, Crysteel's limited, post-contractual contacts with Proserv do not demonstrate that Crysteel purposefully directed activities at Pennsylvania. They only demonstrate that Crysteel responded to a company that had one of its truck bodies and that happened to be in Pennsylvania. *See Key Ingredient Catering LLC v. World Cup Packaging*, No. 19-cv-1178, 2019 WL 3252948, at *4 (E.D. Pa. July 19, 2019) (citing *Langsam-Borenstein P'ship by Langsam v. NOC Enters., Inc.*, 137 F.R.D. 217, 220 (E.D. Pa. 1990)). This case stands in contrast to cases where communications between a plaintiff and defendant were "instrumental in the formation of the contract" between the parties. *See Leone v. Cataldo*, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008).

Second, Crysteel's communications with Proserv do not establish specific jurisdiction because Proserv's claims do not arise from these contacts with the forum. None of Proserv's claims are based on its conversations with Crysteel representatives or the Quality Manger's on-site inspection. *See Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood*, *SDN BHD*, 821 F. App'x 243, 244 (4th Cir. 2020) (no personal jurisdiction because contacts at issue in breach of contract case did not give rise to claim). The fact that Proserv seeks to assert its claims on behalf of a class of similarly situated franchisees demonstrates that its claims do not arise from any individual communication or contact it had with Crysteel; they arise from Crysteel's manufacture of and warranty for the trucks, none of which happened in Pennsylvania. It is true, of

course, the Crysteel would not have been communicating with Proserv in Pennsylvania, and would not have sent a Quality Manager to Pennsylvania, but for the fact that Proserv had acquired a truck that Crysteel manufactured and warranted. But "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test" and "a meaningful link [must] exist[] between a legal obligation that arose in the forum and the substance of the plaintiffs' claims." *O'Connor*, 496 F.3d at 323-24.

## IV. CONCLUSION

Proserv has not demonstrated that the Court has personal jurisdiction over Crysteel for any of the claims against it because its claims do not arise out of any contacts that Crysteel had with Pennsylvania, and the contacts that Crysteel had with Proserv in Pennsylvania do not give rise to the claims. The Court will grant Crysteel's Motion and dismiss the claims against it for lack of personal jurisdiction. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

December 18, 2020